959 A.2d 900

**Wayne BERRIER; Brenda Gregg, in their Own Right and as Parents and Natural Guardians of Ashley Berrier, A Minor**

**v.**

**SIMPLICITY MANUFACTURING, INC.**

**v.**

**Susie Shoff; Melvin Shoff**

**Petition of United States Court of Appeals for the Third Circuit.**

Supreme Court of Pennsylvania.

Oct. 17, 2008.

## ORDER

PER CURIAM.

**AND NOW,** this 17th day of October, 2008, the Petition for Certification of Question of Law is respectfully **DECLINED.** The Motion for Leave to Advise of Supplemental Authority is **DENIED.**

Justice SAYLOR files a Concurring Statement which is joined by Chief Justice CASTILLE.

Justice SAYLOR, concurring.

I support the Court's decision to deny the petition for certification, but I wish to summarize my own rationale as follows.

The petition for certification seeks this Court's review in an arena in which there has been great difficulty achieving consensus. We recently accepted review of the foundational matter of whether the strict liability doctrine appropriately applies in design-defect cases. *See Bugosh v. I.U. North Am., Inc.,* 596 Pa. 265, 942 A.2d 897 (2008) (*per curiam* ). With full appreciation and respect for the difficulties presented to the federal courts in predicting Pennsylvania law in this arena, at this juncture I believe that this Court's limited resources are best centered on the global issues. Notably, the federal courts are not without guidance as to current law, since, as the district court recognized, this Court has sent a clear signal that the intended-use doctrine is to be construed narrowly pending a decision on the foundational matters. *See DGS v. United States Mineral Products Co.,* 587 Pa. 236, 898 A.2d 590, 600–01 (2006).

I also note that the district court expressed "grave doubts" about the rationality of Pennsylvania's narrow application of the intended-use doctrine in strict liability theory, as the court believed that the doctrine serves to prevent recovery by innocent bystanders injured by defective products. *Berrier v. Simplicity Corp.,* 413 F.Supp.2d 431, 442 (E.D.Pa.2005). However, fair compensation is not precluded by the intended-

use doctrine. Rather, affected product-liability claims are channeled into negligence theory, where they may rise or fall on their merits. *Cf. DGS*, 898 A.2d at 604 ("[C]onsumers are protected by the availability of negligence theory to vindicate meritorious design-defect claims that are grounded in negligence concepts, and in this setting, disputes may be resolved on a level playing field[.]"). Indeed, the district court implicitly recognized this, since it engaged in a full substantive review of the viability of the plaintiffs' negligence claim. *See Berrier*, 413 F.Supp.2d at 443–49. A complete and fair discourse concerning the reasonableness of the prevailing Pennsylvania strict-liability doctrine should include an understanding of alternative, available theories for recovery; the history and development of Section 402A of the Second Restatement; the distinction between manufacturing- and design-defect cases; the history and development of Pennsylvania law in the design-defect arena; and prevailing inconsistencies and ambiguities which have arisen out of Pennsylvania's unique approach to the subject. *See Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000, 1012–23 (2003) (Saylor, J., concurring).

Finally, the district court's apparent perception of an injustice, as applied to the present case, is incongruent with its resolution of the plaintiffs' negligence claim. In this regard, the court engaged in a risk-utility analysis very similar to that required of courts as a threshold determination in the strict product liability setting, *compare Berrier*, 413 F.Supp.2d at 443–48, *with Fitzpatrick v. Madonna*, 424 Pa.Super. 473, 623 A.2d 322, 324–28 (1993); held that the plaintiffs had failed to adduce evidence of a feasible safer design alternative, *see id.* at 448;[1] and concluded that imposing a duty to incorporate

---

1. It seems clear that the plaintiffs' claim of an alternative safer design was at the center of both their negligence and strict liability claims. *See* Appx. 513–528; *accord Duchess v. Langston Corp.*, 564 Pa. 529, 769 A.2d 1131, 1149 n. 24 (2001) (citing 63A AM.JUR.2D PRODUCTS LIABILITY § 1095 (1997) (explaining that "[t]he reasonableness of choosing from among various alternative product designs and adopting the safest one if it is feasible is not only relevant in a design defect action, but is at the very heart of the case")).

the proposed alternative design "would transform [the defendant] into an insurer of its products in violation of Pennsylvania law." *Id.* (citing *Azzarello v. Black Bros. Co.,* 480 Pa. 547, 391 A.2d 1020, 1024 (1978)).[2]

Ultimately, if the district court is correct in its risk-utility assessment and in its conclusion that the plaintiffs failed to establish a feasible alternative safer design, the rationale should serve as a complete disposition of both the negligence and strict-liability claims, and there should be no need for the Third Circuit to address the intended-use doctrine. If the district court is wrong on that score, then it would appear that the plaintiffs should be permitted to proceed to a jury determination, at least on their negligence claim. I express no opinion on the merits of the issue of alternative safer design— it is referenced here only in the context of my rationale concerning the certification matter and to address the district court's stated concerns as they relate to the administration of justice in Pennsylvania.

Chief Justice CASTILLE joins this concurring statement.

---

**2.** *Azzarello,* of course, is Pennsylvania's seminal strict-liability case, which expresses the concern that product suppliers should not be transformed into insurers against all injuries caused by the product. *See Azzarello,* 391 A.2d at 1024–25.